[Cite as *State v. Davis*, 2015-Ohio-4481.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-518 |
| v. | : | (C.P.C. No. 11CR-2313) |
| Levander R. Davis, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 29, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Levander R. Davis*, pro se.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Levander R. Davis is appealing from the denial of his petition for post-conviction relief. He assigns five errors for our consideration:

> [1.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO HOLD AN EVIDENTIARY HEARING ON THE APPELLANT'S POST-CONVICTION PETITION.
>
> [2.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF PURSUANT TO THE MANY CONSTITUTIONAL VIOLATIONS RELATED TO PRETRIAL IDENTIFICATION.
>
> [3.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO THE .40 CALIBER HANDGUN.

[4.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO THE SEARCH WARRANT FOR BUCCAL SWABS, WHICH WAS INVALID BECAUE IT WAS NOT SIGNED BY A JUDGE OR MAGISTRATE.

[5.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO POLICE OFFICER'S MISHANDLING OF THE BUCCAL SWABS TAKEN FROM THE APPELLANT FOR THE PURPOSES OF DNA TESTING.

{¶ 2} Davis appealed his conviction previously, and a panel of this court affirmed the action of the trial court. *State v. Davis*, 10th Dist. No. 12AP-156, 2013-Ohio-2770. In our earlier decision, we wrote:

On May 2, 2011, defendant was indicted on one count each of murder, attempted murder, felonious assault, having a weapon while under disability, and illegal possession of a firearm in a liquor permit premises. Each charge also carried a firearm specification. Upon application of the assistant prosecuting attorney, and for good cause shown, the trial court ordered that a nolle prosequi be entered as to the illegal possession of a firearm in a liquor permit premises charge. Following trial, defendant was found guilty of the remaining charges in the indictment. The events giving rise to the indictment occurred during the early morning hours of March 8, 2012.

On March 8, 2012, defendant was a patron at Mike's Bar in Columbus, Ohio. The area where Mike's Bar is located is a high-crime area known to have gang related activity. That night, there were several patrons inside the bar near defendant, including Brandon Houston, DeAndre Fagain, and Dimetri Evans, all of whom testified at defendant's trial.

Houston testified that he was at the bar with his friends, Tumarcus Steele, Donatello Taliaferro, Fagain, and a man named Al, whose last name Houston did not know. According to Houston, there were approximately 40 patrons inside Mike's Bar that evening. Houston testified that he observed defendant at the bar with two other men, neither of whom Houston knew: Tracy Ferguson, Jr., and a man with tattoos on his face who was later identified as Evans. Shortly after Houston arrived, he saw defendant lift his shirt and expose a gun. At the same time, Houston observed Ferguson "throwing up gang signs in the

mirror." (Tr. 101.) At that time, Evans approached Ferguson and tried to get him to stop. Instead, Ferguson became more hostile and began arguing with Evans and defendant. At that time, Houston observed defendant reach for his hip and extend his arm. Houston heard the first gun shot at which time he turned and ran into the bathroom. According to Houston, he heard three gun shots, followed by silence and then additional gunfire and screaming. Houston stayed in the bathroom until the bar was quiet. Houston did not see defendant actually fire the gun and did not see anyone get shot. As he left the bar, Houston stumbled on a magazine clip from a gun which he pointed out to police.

Fagain testified that he observed three people in the bar having an argument, and described one of those men as trying to calm down one of the other two men. Fagain observed defendant first hit Ferguson and then pull out a gun and shoot Ferguson. Fagain testified further that, after defendant shot Ferguson, defendant "just started shooting up the club." (Tr. 260.) Fagain testified that defendant was the only one shooting at the time. When the shooting began, Fagain turned to run and was shot several times.

Evans was at the bar that night with defendant and Ferguson. Evans' testimony corroborated Houston's testimony that Ferguson was throwing up gang signs. Evans testified that he knew defendant had several different guns, he knew defendant frequently carried a gun, and sometimes carried more than one gun. Evans testified that he saw defendant with a gun on the night in question, and saw defendant shoot Ferguson.

Columbus Police Officer Jim Thiel was the first officer to arrive at the scene. Officer Thiel saw four to five shell casings lying in the entrance to the bar. Columbus Police Officer Timothy Mounts testified that eleven 9mm spent shell casings were recovered from the north end of the bar and that, in that same area, thirty-three 40 caliber spent shell casings were also recovered. It was determined that the 9mm shell casings had been fired from a 9mm gun which was later recovered from defendant. Columbus Police Officer Kevin Jackson testified and identified photographs he took at the scene. Columbus Police Detective Jacqueline Mitchell identified evidence which she collected and logged, including a black ammunition magazine clip found near the entrance to the bar.

Columbus Police Sergeant Jeff Matthias testified concerning the circumstances surrounding defendant's arrest. At the time of his arrest, defendant admitted that he had a gun in his waistband. Sergeant Matthias identified the gun recovered from defendant as a loaded 9mm Smith & Wesson. A ballistics expert determined that the 9mm casings found at the scene were fired from defendant's handgun. The 40 caliber handgun was never recovered.

The magazine clip Houston saw in the doorway was recovered and was determined to be a 40 caliber handgun magazine clip. DNA obtained from the magazine clip was compared to a sample of defendant's DNA and it was determined that defendant was a major contributor to the DNA on the magazine clip. During cross-examination, the forensic scientist who processed the DNA sample explained that a major contributor "relates to the quantity of that DNA being left on that item." (Tr. 597.) The analyst also testified that DNA can be transferred from one object to another.

Defendant's counsel called Columbus Police Detective Robert Wachalec to testify. Detective Wachalec was the blind administrator for a photo array presented to Fagain. In his report regarding the photo array, Detective Wachalec indicated that Fagain identified Evans as the shooter. Detective Wachalec testified at trial that his summary of the identification was not accurate, because Fagain had actually identified defendant as the shooter.

Following a sentencing hearing on January 18, 2012, defendant was sentenced to serve 15 years to life for the murder conviction, ten years for the attempted murder conviction, eight years for the felonious assault conviction, three years for having a weapon while under disability conviction, and three years for each firearm specification. The trial court ordered that defendant serve the attempted murder, felonious assault, and having a weapon while under disability sentences concurrently to each other, but consecutive to the murder sentence and consecutive to the firearm specifications. The court merged two of the sentences for the firearm specifications. The court further ordered that defendant serve the sentence herein consecutive to a ten years prison sentence from common pleas case No. 11CR-2202, for a total prison term of 44 years to life.

*Id.* at ¶ 2-11.

{¶ 3}   In June 2013, Davis filed a petition for post-conviction relief with minimal evidence attached to the petition.  The trial court judge assigned to the case found insufficient evidence to warrant a full evidentiary hearing.  We review that finding under an abuse-of-discretion standard.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 4}   We cannot find that the judge abused his discretion in refusing to conduct an evidentiary hearing.  The first assignment of error is overruled.

{¶ 5}   The trial court judge filed a written decision on April 23, 2015 denying the petition for post-conviction relief.  The trial court wrote:

> In the petition to vacate the judgment, Defendant argues that he was denied effective assistance of counsel and that his DNA was improperly seized. The Defendant failed to attach any evidence to support either claim. In fact, the Defendant's claim regarding the warrant for the DNA was improper is incorrect. Defendant makes the claim that the warrant was never signed when in fact it was.  In addition, each of the Defendant's claims in his post conviction petition could have been or were addressed on direct appeal and are, therefore, barred by the doctrine of res judicata. *State v. Mack*, 10th Dist. No. 13AP-884, 2014-Ohio-1648.

{¶ 6}   The trial court judge's findings that the doctrine of res judicata barred relief are correct.  Everything alleged by Davis was either litigated during the trial or could have been litigated at the trial.

{¶ 7}   Further, Davis's DNA was in possession of the State of Ohio as a result of his past criminal activity.  The swabs seized from him additionally were seized legally after a search warrant was issued to obtain them.  The fact that the return warrant was not signed does not mean the warrant itself was not signed.  The fourth and fifth assignments of error are overruled.

{¶ 8}   Davis was well-known to at least one of the witnesses who testified at the trial. Identification of him as being present at Mike's Bar was not in serious question.  The second assignment of error is overruled.

{¶ 9}   The issue regarding the .40-caliber handgun was fully developed during the trial.  The jury had the issue before it and still entered guilty findings.  This issue was even

more clearly subject to the doctrine of res judicata.  The third assignment of error is overruled.

{¶ 10}  All five of Davis's assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____